UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **EUGENE CAMPBELL** | **CASE NO. 3:20-CV-00068** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JEREMY STURDIVANT, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 14] filed by defendants Jeremy Sturdivant, Caleb Smith, and Sharona Daniel. The motion is unopposed. For reasons set forth below, it is recommended that the motion be granted.

**Background**

On January 15, 2020, plaintiff pro se Eugene Campbell filed the instant civil rights complaint under 42 U.S.C. § 1983 against Monroe police officers Jeremy Sturdivant, Caleb Smith, and Sharona Daniel in their individual and official capacities. Campbell asserted that on January 19, 2019, multiple officers with the Monroe Police Department initiated a traffic stop of his vehicle. After Campbell pulled into a parking lot, Officer Daniel emerged from her vehicle with her weapon drawn and began yelling at plaintiff to place his hands on the steering wheel. Campbell so complied.

Meanwhile, Officer Smith approached plaintiff's vehicle, tapped on the window and instructed plaintiff to open the door and exit the vehicle. As Campbell was exiting the vehicle, Officer Smith struck plaintiff with a closed fist to the right anterior ribs. Smith then forcibly took plaintiff to the ground. As a result of Smith's takedown, plaintiff sustained a contusion to

his left temple, scrapes and bruises to his knees, and bruises to the right side of his body.

The officers then transported plaintiff to the police station where they proceeded to taunt him when he failed to answer their questions. Plaintiff notified Officer Smith about his injuries and pain. In response, Officer Sturdivant offered plaintiff a paper towel to use on his bleeding knees and advised him against dripping blood on the station floor. Thereafter, plaintiff was placed in a holding cell pending transportation to the Ouachita Correctional Center ("OCC").

Officer Sturdivant later returned with additional officers, whereupon "the attendant" told him that plaintiff had requested medical. Sturdivant remarked that plaintiff had been in a holding cell for the past two hours and was just now asking for medical attention in an attempt to avoid going to jail. Plaintiff explained to Sturdivant that he had told Officer Smith about his injuries. Sturdivant yelled at plaintiff to sit down and be quiet. Sturdivant further remarked that it was unfortunate that plaintiff had requested medical attention, because he had been about to be released from jail. Plaintiff interpreted Sturdivant's statement as an attempt to dissuade him from seeking medical attention.

Smith brought plaintiff to Conway/Ochnser Hospital. After he was released from hospital, Smith transported plaintiff to OCC. Smith told someone on his cell phone that plaintiff continued to remain silent, which was making the interaction "weird."

Plaintiff alleged that, as a result of the encounter, he received a contusion to the left temple area, bruising to the right, anterior rib area, as well as cuts and scrapes to his knees. His injuries were bandaged at the hospital.

Plaintiff seeks reimbursement for $1,400 in medical bills, lost wages of $3,600, emotional distress and mental anguish damages of $10,000, plus $75,000 in punitive damages.

Plaintiff asserted that he suffers episodes of anxiety that are triggered by loud noises and flashing lights. Furthermore, he harbors an irrational fear of all interactions with authorities as a result of defendant, Daniel's reckless brandishing of a firearm. Of particular note was Sturdivant's attempt to dissuade plaintiff from seeking medical attention. Plaintiff also faults defendant for not offering him medical attention.

On September 2, 2020, all three defendants joined in the instant motion to dismiss plaintiff's complaint for failure to state a claim for relief against them in both their individual and official capacities. In support of the motion, defendants attached copies of documents from Campbell's related state court criminal proceedings which indicate that following Campbell's arrest, criminal charges were brought against him in the Fourth Judicial District Court for the Parish of Ouachita, State of Louisiana. *See State of Louisiana v. Eugene Campbell*, No. 19-CR-000360-5 (4th J.D.C., Ouachita Parish) (Bill of Information, Citation, Waiver of Rights, Court Minutes; M/Dismiss, Exhs. 1-3).

The exhibits reveal that on March 19, 2019, Campbell was charged by Bill of Information with six counts: Count 1 – Driving while intoxicated – 2nd Offense, in violation of La. R.S. 14:98.2; Count 2 – Resisting an officer by flight, in violation of La. R.S. 14:108.1; Count 3 – Resisting an officer, in violation of La. R.S. 14:108; Count 4 – Speeding; Count 5 – Disobeying a red light; and Count 6 – Possession of an open alcoholic beverage in a motor vehicle. *Id.* On July 23, 2020, Campbell, with the assistance of retained counsel, pled guilty to Counts 1 (Driving while intoxicated – 2nd Offense) and 3 (resisting an officer "to wit: (Sgt. Sturdivant)."

On September 25, 2020, plaintiff filed an amended complaint that, in all material respects, appears to be the same as his original complaint. (Amend. Compl. [doc. # 18]).

3

Plaintiff, however, did not file an opposition to the motion to dismiss and the time to do so has lapsed. *See* Notice of Motion Setting. [doc. # 14]. Thus, the motion is deemed unopposed. *Id*. Nonetheless, the court is unable to grant a motion to dismiss solely because the plaintiff failed to oppose the motion. *Webb v. Morella*, 457 Fed. Appx. 448, 452 (5th Cir.2012) (citation omitted).

The court further notes that an "amended complaint supersedes the original complaint and renders it of no legal effect, unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)). Here, there is no indication that the amended complaint adopted or referenced the earlier pleading. Therefore, the sole, operative complaint before the court is the amended complaint, to which the court will apply the arguments raised by defendants' motion.[1]

### Standard of Review

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief, *inter alia*, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. Fed.R.Civ.P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.

---

[1] The court may consider a motion to dismiss "as being addressed to the amended pleading." *Rountree v. Dyson*, 892 F.3d 681, 683–84 (5th Cir.2018), *cert. denied*, 2018 WL 4385808 (Dec. 3, 2018).

Ct. 1955 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [his] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell*

5

*Atl.*, 127 S. Ct. at 1958).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra*. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly, supra*. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record); *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 Fed. Appx. 888, 892 (5th Cir.2020) (citations omitted) (court may take judicial notice of public records from state court proceedings).

## Analysis

### I. Individual Liability under § 1983

Section 1983 provides that any person who, under color of state law, deprives another of "any rights, privileges or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. ' 1983). Section 1983,

however, does not create any substantive rights; it simply provides a remedy for the rights designated therein. *Id*. "Thus, an underlying constitutional or statutory violation is a predicate to liability under ' 1983." *Id*. (citation omitted).

To state a cognizable claim for relief under 42 U.S.C. § 1983, "a plaintiff must plead two—and only two—allegations . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Arnold v. Williams*, ___ F.3d ____, 2020 WL 6298043, at *3 (5th Cir. Oct. 23, 2020) (citation and internal quotation marks omitted).

However, when, as here, plaintiff seeks money damages from government officials in their individual capacities under ' 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests C "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*. As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id*. (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213

7

F.3d 226, 230 (5th Cir.2000) (citing *Malley v. Briggs,* 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir.2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id*. "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

A law is clearly established when there exists "a controlling authority or a 'robust consensus of persuasive authority' that defines the contours of the right in question with a high degree of particularity." *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir.2013). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Id.* (citations and internal quotation marks omitted). Nonetheless, there is the "rare possibility that, in an obvious case, analogous case law is not needed because the unlawfulness of the [challenged] conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Joseph v. Bartlett*, No. 19-30014,

8

2020 WL 6817823, at *6 ___ F.3d ___, (5th Cir. Nov. 20, 2020) (citations and internal quotation marks omitted).

In the end, the question becomes whether the right is "sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right." *Hogan, supra* (citations and internal quotation marks omitted). Because it is plaintiff's burden to establish that the challenged conduct violated clearly established law, the district court may, but is by no means obliged to undertake the clearly established law analysis on its own. *See Joseph, supra*.

When, as here, a defendant pleads qualified immunity in a motion to dismiss, the plaintiff need not "exceed the short-and-plain-statement standard of Rule 8." *Arnold, supra* (citation omitted). Instead, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir.2012). In other words, plaintiff must plead qualified immunity facts with the "minimal specificity" required by *Twombly* and *Iqbal*. *Arnold, supra*.

The court will address each of plaintiff's claims, in turn. Furthermore, where, as here, the defendants have not acted in unison, "qualified immunity claims should be addressed separately for each individual defendant." *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 731 (5th Cir.2018) (citation omitted), *cert. denied sub nom. City of Fort Worth, Tex. v. Darden*, ___ U.S. ___, 139 S.Ct. 69 (2018).

a) Excessive Force

The Supreme Court has proclaimed that "*all* claims that law enforcement officers have

9

used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . ." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989). Of course, the protections of the Fourth Amendment extend to the states pursuant to the Fourteenth Amendment. *Dunaway v. New York*, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).

"A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 127 S.Ct. 2400, 2405 (2007) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868 (1968) (internal quotation marks omitted).

To support his excessive force claim, plaintiff must establish: "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir.2007) (citations omitted). By nature, excessive force claims are fact-intensive and dependent on the circumstances of each case. *Hanks v. Rogers*, 853 F.3d 738, 745 (5th Cir.2017) (citations omitted). Factors that the court should consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations and internal quotation marks omitted).

The court must analyze the claim from the perspective of a reasonable officer on the scene. *Id*. (citation omitted). Thus, the "inquiry is whether the officer's actions were objectively

reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Id.* (citations and internal quotation marks omitted).

Furthermore, "the plaintiff must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged." *Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995).

       *i)*      *Officer Daniel*

Plaintiff contends that Officer Daniel used excessive force when she emerged from her vehicle with her weapon drawn whilst effecting a routine traffic stop. He further asserted that the encounter caused him to suffer psychological trauma. As an initial matter, it was clearly established by 2004 that purely psychological injuries can suffice to state a Fourth Amendment excessive force claim. *Flores v. City of Palacios*, 381 F.3d 391, 400 (5th Cir.2004) (citations omitted). Furthermore, plaintiff's allegation that he suffers a fear of interaction with authorities as a result of Daniel's brandishing of a firearm suffices to state a claim for substantial psychological injury – at least at the pleading stage.

However, the *Graham* factors support Officer Daniel's decision to brandish her weapon. Plaintiff's allegation that this was a routine traffic stop is belied by his subsequent guilty plea to a charge of driving while intoxicated.[2] Indeed, driving while intoxicated represents a serious crime. *Bros. v. Zoss*, 837 F.3d 513, 519 (5th Cir.2016). Moreover, because a motor vehicle may be used as a dangerous weapon, Campbell remained a potential danger to the officers and others so long as he stayed in the vehicle. *Zoss, supra*. A reasonable officer also could have

---

[2] The court takes judicial notice of plaintiff's guilty plea. Furthermore, plaintiff has not challenged the validity of his guilty plea.

11

feared that Campbell had a weapon on his person or in his vehicle. *Id.* (citation omitted). In fact, this is consistent with Daniel's actions because she instructed plaintiff to place his hands on the steering wheel.

In short, plaintiff has not established a plausible excessive force claim stemming from Officer's Daniel's brandishing of a firearm. Even there was a constitutional violation, plaintiff has not identified case law to show that Officer Daniel's actions violated clearly established law. *See e.g.*, *Strickland v. City of Crenshaw, Miss.*, 114 F.Supp.3d 400, 418 (N.D. Miss.2015).

    ii)  *Officer Sturdivant*

The court does not discern from the complaint, as amended, any allegations of excessive force against Officer Sturdivant. Accordingly, insofar as plaintiff intended to assert such a claim, he failed to do so.

    iii)  *Officer Smith*

Plaintiff alleged that, as he was exiting the vehicle in compliance with Officer's Smith's instructions, Officer Smith struck him with a closed fist to the ribs, and then forcefully took him to the ground. While defendants contest that Officer Smith was involved with plaintiff's removal from the vehicle at all, the court must accept as true all factual allegations set forth in the complaint. Defendants further emphasize that plaintiff was resisting an officer. According to the exhibits, however, plaintiff pleaded guilty to resisting Officer Sturdivant, not Officer Smith. Moreover, there is no indication that plaintiff was resisting Sturdivant at the time that Smith punched him and forced him to the ground.

Thus, here, the allegations and evidence suggest that the officers had stopped plaintiff for a potentially serious crime, but that he was exiting the vehicle in compliance with the officers'

12

instructions when Smith punched him and forced him to the ground. There is no indication that plaintiff posed an immediate safety threat to the officers as he was exiting the vehicle, or that he was resisting or attempting to flee at that time. It has been long-established in the Fifth Circuit that officers engage in excessive force when they physically strike a suspect who is not resisting arrest. *Joseph, supra* (citation omitted); *Darden, supra* (a police officer uses excessive force when the officer strikes, punches, or violently slams a suspect who is not resisting arrest).

Having said that, however, it is manifest that "[t]o state a claim for excessive use of force, the plaintiff's asserted injury must be more than *de minimis*." *Brooks v. City of W. Point, Miss.*, 639 Fed. Appx. 986, 990 (5th Cir.2016) (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). Thus, abrasions, bruises and even bloody urine, high blood pressure, plus elevated heart rate constitute de minimis injuries that do not suffice to support an excessive force claim. *Westfall v. Luna*, 903 F.3d 534, 550 (5th Cir.2018). Here, plaintiff alleged no more than a contusion, scrapes, and bruises, which does not suffice to state a claim for excessive force.

    b) <u>Delayed Medical Care</u>

Plaintiff alleged that Officers Smith and/or Sturdivant delayed and declined to offer him medical care for a period of over two hours. A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). When a pretrial detainee initiates a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied. *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v. City of Corinth,* 74 F.3d

13

633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996). This is the same standard applied to claims brought by convicted prisoners under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001). To establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner*, *supra*; *Hernandez v. Velasquez*, 522 F.3d 556, 561 (5th Cir. 2008) (citation omitted); *see also Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285 (1976).

Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001). "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th

14

Cir.1993) (emphasis added).

Here, plaintiff did not allege facts to show that his roughly two-hour delay in receiving medical care caused him to suffer substantial harm, or that defendants, Smith and Sturdivant, could, and did, draw an inference that a delay in treatment would cause substantial harm to plaintiff. *See Harvey v. Jones*, No. 15-2279, 2015 WL 9687841, at *2 (W.D. La. Nov. 16, 2015), *R&R adopted,* 2016 WL 112713 (W.D. La. Jan. 8, 2016) (two-hour delay in transportation to medical facility did not cause substantial harm).

In *Houston v. Dunn*, the Fifth Circuit determined that a two-hour delay in receiving treatment where the prisoner, a diabetic, was unconscious on the floor, did not state a claim for relief. *Houston v. Dunn*, 487 Fed. Appx. 164, 165 (5th Cir.2012) (citations omitted). Similarly, in *Stephens v. Scott*, the Fifth Circuit upheld dismissal of plaintiff's claims that defendants were deliberately indifferent to his medical needs by delaying treatment where the plaintiff was treated within three hours of his police encounter and there was no allegation that the delay resulted in substantial harm. *Stephens v. Scott*, 244 Fed. Appx. 603, 606 (5th Cir.2007) (citing *Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir.1993)).

The same result obtains here. Plaintiff has not alleged facts to show that his delay in receiving treatment caused him to suffer substantial harm. Furthermore, his description of his injuries do not appear to be of such a nature that defendants would have drawn the inference that he was at risk of serious harm if he was not immediately transported to the emergency room. *Wesson v. Oglesby*, 910 F.2d 278, 284 (5th Cir.1990) (swollen wrists with some bleeding does not constitute a serious medical need); *Raspberry v. Johnson*, 281 F.3d 1279 (5th Cir.2001) (alleged denial of treatment for injured hand and bruised head does not set forth a serious

15

medical condition or deliberate indifference to a serious medical condition).

Even if plaintiff had demonstrated a plausible constitutional claim for delayed medical care, he has not shown that any reasonable officer would have known that the challenged conduct violated clearly established law at the time of the incident.

c) Retaliation

Although not addressed by defendants, the facts alleged in plaintiff's complaint potentially support a retaliation claim against Officer Sturdivant. To state a valid claim for retaliation under section 1983, a detainee must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999) (citation omitted). Furthermore, "[t]he [detainee] must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred." *Id.* (citation and internal quotation marks omitted). If the detainee is unable to point to a specific constitutional right that has been violated, the claim will fail. *Id.* (citation omitted).

Here, plaintiff alleged that when he invoked his right to medical care, Officer Sturdivant remarked that this was unfortunate because he had been about to be released from jail. Consistent with Sturdivant's statement, in lieu of release, plaintiff was transported to OCC after he received medical care.

To be sure, plaintiff has a constitutional right to be free from *unlawful* detention. *See e.g.*, *Fillios v. Harahan Police Dep't*, No. 19-45, 2019 WL 2009241, at *5 (E.D. La. May 7, 2019). However, Campbell later entered guilty pleas to charges of driving while intoxicated and

16

resisting an officer. In light of his acknowledgment of the validity of these charges, plaintiff cannot contend in good faith that his continued detention was unlawful. Furthermore, in the absence of facts showing that individuals with these charges ordinarily, or even sometimes, are released from jail after the passage of two hours, the court finds that plaintiff has not stated a plausible claim for retaliation.[3]

## II. Official Capacity Claims

Plaintiff also sued defendants in their official capacities. Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (citation omitted). A local government entity or municipality is not subject to liability under § 1983 by virtue of the doctrine of respondeat superior. *O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985). Thus, to impose § 1983 liability against a government entity for the misconduct of one of its employees or officers, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). Specifically, a plaintiff must identify (a) a policymaker, (b) an official policy or custom or widespread practice, and (c) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell*, 436 U.S. at 694.[4] "In a Section 1983 case, the burden of proving the

---

[3] The court further observes that insofar as plaintiff seeks to hold defendants liable for taunting him while he was in custody, allegations of verbal abuse do not present actionable claims under § 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir.1993) (citations omitted).

[4] For purposes of *Monell* liability, "[t]he final policymaker is the official or body upon whom state or local law has conferred the power to adopt rules governing the conduct of the entity's employees; merely granting an employee discretionary authority does not make the employee a final policymaker." *Lee v. Morial*, No. 99-2952, 2000 WL 726882, at *2 (E.D. La. June 2,

17

existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In response to defendants' motion, plaintiff did not satisfy each of the elements of a *Monell* claim against them, in their official capacities. Accordingly, plaintiff fails to state a claim for relief under *Monell.*

## Conclusion

As instructed by *Iqbal*, the court has accorded no weight to the conclusory allegations in plaintiff's complaint. *See Iqbal, supra*. Plaintiff's remaining allegations contain no facts to confer plausibility upon his § 1983 claims sufficient to overcome defendants' qualified immunity defense, or to sustain a *Monell* claim. *Id.*; *see also City of Clinton, Ark., supra*. Under these circumstances, there is no reasonable expectation that discovery will reveal evidence to support the missing elements of the claim(s). *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.

For these reasons,

IT IS RECOMMENDED that the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 14], filed by defendants, Jeremy Sturdivant, Caleb Smith, and Sharona Daniel be GRANTED, and that plaintiff's complaint, as amended, be DISMISSED, with prejudice, in its entirety, as to all defendants. FED. R. CIV. P. 12(b)(6).[5]

---

2000).

[5] To the extent that the undersigned has expanded upon the grounds for dismissal urged by movants, the instant report and recommendation provides adequate notice to the parties. *McCoy v. Wade*, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). In any event, the court possesses the inherent authority to dismiss a party sua sponte. *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 1995 WL 534901 (5th Cir. 1995) (unpubl.) (the district court sua sponte dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 25th day of November 2020.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

---

state a claim in their answer).